IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| LEWIS TILLEY,<br><br>       Plaintiff,<br>v.<br><br>MOUNTAIN AMERICA FEDERAL CREDIT UNION,<br><br>       Defendant. | **MEMORADUM DECISION AND ORDER GRANTING MOUNTAIN AMERICA'S MOTION TO DISMISS**<br><br>Case No. 2:17-cv-01120-JNP-BCW<br><br>District Judge Jill N. Parrish |

Before the court is Mountain America Federal Credit Union's motion to dismiss Lewis Tilley's complaint. [Docket 23]. The court GRANTS the motion and dismisses Tilley's only federal claim with prejudice. The court, therefore, dismisses the remaining state-law claims without prejudice for lack of subject matter jurisdiction.

## BACKGROUND

Tilley had a checking account at Mountain America and had agreed to participate in its overdraft service. Under this service, the credit union agreed to cover a charge when there were insufficient funds in the account. Mountain America charged a $20 fee for each overdraft draw it covered. The opt-in agreement to Mountain America's overdraft service described the conditions under which it assesses an overdraft fee as follows: "An <u>overdraft</u> occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway."[1]

---

[1] Mountain America attached a copy of the opt-in agreement to its motion to dismiss. Because this document was referenced in Tilley's complaint and no one disputes the its authenticity, the court may consider the opt-in agreement without converting Mountain America's motion to a motion for summary judgment. *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249,

There are two principal methods for determining the amount of money in a checking account. The first is the ledger balance method, which is the amount that a credit union member sees when he or she looks up their account balance. The ledger balance excludes debit card charges that have been authorized by the financial institution but that have not yet posted to the account. It also includes the full amount of deposits even if the funds have not yet cleared. The second is the available balance method. The available balance takes into account authorized debit card charges that have not yet posted to the account and excludes deposits if the funds have not yet been cleared by the credit union. Mountain America uses the available balance method to determine whether a member has overdrawn his or her checking account.

On January 10, 2016, Tilley had a ledger balance of $49.31 in his checking account. He made a debit card purchase for $11.86. But the available balance of the account was insufficient to cover this charge, so Mountain America assessed a $20 overdraft fee.

On October 10, 2017, Tilley filed a complaint against Mountain America based upon this overdraft charge. He asserted a federal claim under the Electronic Fund Transfer Act (EFTA). Tilley also asserted six state-law claims: breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, money had and received, common law unconscionability, and a claim under the Utah Truth in Advertising Act. The complaint sought certification of a class-action lawsuit so that Tilley can represent similarly-situated individuals.

Mountain America filed a motion to dismiss the complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Tilley failed to state a claim upon which relief can be granted.

---

1253–54 (10th Cir. 2005) ("[A] document central to the plaintiff's claim and referred to in the complaint may be considered in resolving a motion to dismiss, at least where the document's authenticity is not in dispute.").

**ANALYSIS**

**I.     THE EFTA CLAIM**

Pursuant to authority granted by the EFTA, the Bureau of Consumer Financial Protection (Bureau) issued Regulation E to establish protections for consumers that engage in electronic funds transfers. 12 C.F.R. § 1005.1. Regulation E sets standards for overdraft services provided by financial institutions, including an opt-in requirement:

> [A] financial institution holding a consumer's account shall not assess a fee or charge on a consumer's account for paying an ATM or one-time debit card transaction pursuant to the institution's overdraft service, unless the institution: (i) Provides the consumer with a notice in writing, or if the consumer agrees, electronically, segregated from all other information, describing the institution's overdraft service; . . . [and] (iii) Obtains the consumer's affirmative consent, or opt-in, to the institution's payment of ATM or one-time debit card transactions . . . .

*Id.* § 1005.17(b)(1); *see also id.* § 1005.17(d)(1) (requiring a "brief description of the financial institution's overdraft service and the types of transactions for which a fee or charge for paying an overdraft may be imposed").

The notice required by Regulation E "shall be substantially similar to Model Form A–9," which is promulgated by the Bureau. *Id.* § 1005.17(d). Model Form A–9 includes the following description of an overdraft service: "An <u>overdraft</u> occurs when you do not have enough money in your account to cover a transaction, but we pay it anyway." *Id* § 1005, App. A. The opt-in form used by Mountain America uses verbatim the language suggested by Model Form A–9 to describe its overdraft service.

Tilley alleges in his complaint that Mountain America violated Regulation E, and by extension the EFTA, because the notice it provided to him did not adequately describe its overdraft service. Specifically, Tilley claims that the notice failed to inform him that Mountain

3

America used the available balance method to determine when an overdraft occurs rather than the ledger balance method.

The court concludes that Tilley failed to state a claim under the EFTA for two reasons: (1) he did not file his complaint within the applicable limitations period and (2) Mountain America is insulated from liability by the EFTA's safe harbor provision.

### A. *Limitations Period*

15 U.S.C. § 1693m(a) authorizes consumers to initiate a lawsuit for a failure to comply with any provision of the EFTA.[2] The lawsuit must be brought "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1693m(g).

Tilley alleges that Mountain America violated Regulation E on January 10, 2016, by assessing an overdraft fee without complying with the notice requirement found in the regulation. Tilley did not file his complaint until October 10, 2017, nine months after the one-year limitations period had run. Tilley argues, however, that the court should not dismiss his EFTA claim because the imitations period was tolled by the discovery rule.[3]

---

[2] This civil liability provision authorizes a lawsuit against "any person who fails to comply with any provision of this subchapter [i.e. the EFTA] with respect to any consumer." 15 U.S.C. § 1693m(a). This language is limited to violations of the provisions of the EFTA and does not explicitly permit lawsuits for violations of regulations authorized by the EFTA. Moreover, the civil liability provisions of other federal statutes contain language expressly authorizing civil enforcement actions for violations of regulations. *See, e.g.*, 31 U.S.C. §§ 5320, 5321, 5322 (authorizing injunctive relief and civil and criminal penalties against financial institutions for "violating this subchapter or a regulation prescribed or order issued under this subchapter"). But because the parties have not raised this issue, and because the court dismisses the EFTA claim on other grounds, the court does not address whether the EFTA impliedly authorizes civil lawsuits based upon the violation of a regulation.

[3] The EFTA does not contain a discovery rule provision. It states that a lawsuit must be brought within one year of the violation and does not allow for any exceptions. The Supreme Court has noted that "the cases in which 'a statute of limitation may be suspended by causes not mentioned in the statute itself . . . are very limited in character, and are to be admitted with great caution; otherwise the court would make the law instead of administering it.'" *Gabelli v. S.E.C.*, 568 U.S.

4

The federal discovery rule tolls the statute of limitations until "the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994). In order to raise a delayed discovery argument, a plaintiff must plead facts supporting his or her failure to discover the injury and its cause as well as facts demonstrating the plaintiff's reasonable diligence to discover the cause of the injury. *See Boettcher v. Conoco Phillips, Co.*, No. 17-6115, 2018 WL 817879, at *2 (10th Cir. Feb. 12, 2018) (unpublished); *Ballen v. Prudential Bache Sec., Inc.*, 23 F.3d 335, 337 (10th Cir. 1994).

Tilley does not plead any facts supporting the delayed discovery argument he raises in response to Mountain America's motion to dismiss. He does not state in his complaint when or how he discovered his injury and its cause. Nor does he allege facts showing that he exercised reasonable diligence to discover the injury or its cause. This failure to plead facts supporting his delayed discovery argument merits dismissal of the EFTA claim.

Furthermore, the facts alleged in the complaint establish that the discovery rule does not apply. The crux of Tilley's claim is that Mountain America violated Regulation E when it

---

442, 454, (2013) (alteration in original) (citation omitted). But the Court has explicitly declined to decide whether some lower courts have correctly held that "all federal statutes of limitations . . . incorporate a general discovery rule 'unless Congress has expressly legislated otherwise.'" *TRW, Inc. v. Andrews*, 534 U.S. 19, 27 (2001) (quoting *Andrews v. TRW, Inc.*, 225 F.3d 1063, 1067 (9th Cir. 2000); *see also id*. at 35–36 (Scalia, J., concurring).

The Tenth Circuit has held that the discovery rule applies to judicially-created *Bivens* actions. *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir. 1994). Additionally, this circuit has read the discovery rule into the limitations provision of the Copyright Act even though the Act is silent on this issue. *Cooper v. NCS Pearson, Inc.*, 733 F.3d 1013, 1015 (10th Cir. 2013). Arguably, the holding of *Cooper* does not apply here because the language of the limitations provision of the Copyright Act differs from the language of the limitations provision of the EFTA. *See* 17 U.S.C. § 507(b) (providing that a copyright action must be filed "within three years after the claim accrued"). The court, however, need not decide whether the limitations provision of the EFTA incorporates the discovery rule because, as discussed below, even if it applies it does not toll the statute of limitations in this case.

assessed an overdraft fee without providing him with an adequate notice of how its overdraft service works. Tilley was aware of or had reason to know the content of the opt-in notice that was provided to him when he agreed to participate in the overdraft service. He also knew or had reason to know that the ledger balance of his checking account was $49.31 when he used his debit card to make an $11.86 purchase on January 10, 2016. Finally, he had reason to know that Mountain America assessed a $20 overdraft fee based upon this purchase. Thus he knew or had reason to know of his injury—the $20 fee. And to the extent that he was surprised by the fee, he knew or had reason to know of the cause of his injury—the inadequate warning of the overdraft fee procedures provided by Mountain America in the opt-in notice. *See Whittington v. Mobiloil Fed. Credit Union*, No. 1:16-CV-482, 2017 WL 6988193, at *13 (E.D. Tex. Sept. 14, 2017) ("If [the plaintiff] had exercised due diligence, she would have discovered her injuries either by viewing her online . . . account or looking at her bank statements."); *Harvey v. Google Inc.*, No. 15-CV-03590-EMC, 2015 WL 9268125, at *4 (N.D. Cal. Dec. 21, 2015) ("If [the plaintiff] had exercised due diligence, she should have discovered the injury either by looking at her . . . account or even more simply, looking at her bank statements.").

Tilley nonetheless argues that the discovery rule should toll the limitations period because he had no reason to know that Mountain America had assessed the overdraft fee based upon the available balance method. But Tilley alleges no facts to support this claim. He does not allege, for example, that he exercised reasonable diligence by asking someone at Mountain America to explain his overdraft fee. Nor does he allege that none of Mountain America's publicly available information discloses the method by which overdraft fees are assessed. Moreover, Tilley did not have to know the precise method Mountain America used to assess an overdraft fee in order to have reason to know the cause of his injury—the inadequate opt-in notice. Under his EFTA

6

claim, he only needed to have reason to know that the opt-in notice did not sufficiently inform him that he could be liable for an overdraft fee even if the ledger balance of his account was sufficient to cover a charge. Tilley did not have to know that Mountain America used the available balance method.

The court, therefore, determines that the discovery rule does not apply here and dismisses the EFTA claim because it is barred by the one-year limitations period.[4]

### B. Safe Harbor Provision

The EFTA contains a safe harbor provision, which states that "[n]o provision of this section . . . imposing any liability shall apply to . . . any failure to make disclosure in proper form if a financial institution utilized an appropriate model clause issued by the Bureau or the Board." 15 U.S.C. § 1693m(d). Regulation E mandates that financial institutions shall use an opt-in notice that is "substantially similar to Model Form A–9," which is promulgated by the Bureau. 12 C.F.R. § 1005.17(d). Mountain America argues that the EFTA's safe harbor provision insulates it from liability because it used verbatim the appropriate clause of Model Form A–9 to describe its overdraft service. Indeed, its opt-in notice is almost identical to Model Form A–9, with only slight modifications to account for differences in its overdraft service. Tilley, however, contends that the safe harbor provision does not bar his EFTA claim for three reasons.

Tilley first argues that the EFTA's safe harbor provision does not shield financial institutions from challenges to the adequacy of the language of the opt-in notice. Citing authority from a federal district court in Michigan, he asserts that "the statutory language [of the safe harbor provision] suggests that this defense insulates an institution only from a challenge as to

---

[4] The litigants disagree as to whether limitations period would begin anew for overdraft charges that occurred after the January 10, 2016 charge. The court, however, has no occasion to resolve this dispute because Tilley did not plead any other overdraft charges to his account.

the form—not the adequacy—of the disclosure." *Pinkston-Poling v. Advia Credit Union*, 227 F. Supp. 3d 848, 852 (W.D. Mich. 2016) (alteration in original) (citation omitted).[5] This reading of the safe harbor provision divides the inadequate disclosure claims that may be brought under the EFTA into two categories: challenges as to the form of the disclosure and challenges as to the substance or adequacy of the disclosure. *Pinkston-Poling* reasoned that a claim that the language of a disclosure is inadequate falls into the second category and held that the safe harbor provision does not apply to such claims. 227 F. Supp. 3d at 852–53.

This court respectfully disagrees with the *Pinkston-Poling* court's interpretation of the EFTA's safe harbor provision because it would render it a nullity. "It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (citation omitted); *accord Washington Mkt. Co. v. Hoffman*, 101 U.S. 112, 115–16 (1879) ("As early as in Bacon's Abridgment, sect. 2, it was said that 'a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'"). Interpreting the safe harbor provision to exclude any protection from challenges to the adequacy of the language of the disclosure would make the provision completely ineffectual. Regulation E requires financial institutions to disclose certain specified information, including a "brief description of the . . . overdraft

---

[5] S*ee also Pinkston-Poling v. Advia Credit Union*, No. 1:15-CV-1208, 2017 WL 5153218, at *2 (W.D. Mich. Apr. 20, 2017) (denying a motion for reconsideration on the safe harbor issue); *Walbridge v. Ne. Credit Union*, No. 17-CV-434-JD, 2018 WL 1187407, at *7 (D.N.H. Mar. 7, 2018) (adopting the holding of *Pinkston-Poling*); *Gunter v. United Fed. Credit Union*, No. 315CV00483MMDWGC, 2017 WL 4274196, at *3 (D. Nev. Sept. 25, 2017) (same); *Smith v. Bank of Hawaii*, No. CV 16-00513 JMS-RLP, 2017 WL 3597522, at *8 (D. Haw. Apr. 13, 2017) (same); *Ramirez v. Baxter Credit Union*, No. 16-CV-03765-SI, 2017 WL 118859, at *7 (N.D. Cal. Jan. 12, 2017) (same). *But see Tims v. LGE Cmty. Credit Union*, No. 1:15-CV-4279-TWT, 2017 WL 5133230, at *7 (N.D. Ga. Nov. 6, 2017) (dismissing an EFTA claim and reasoning that the safe harbor provision applied to a claim that the opt-in language was unclear).

service," the amount of any fees imposed, and the maximum number of overdraft fees that may be assessed in one day. 12 C.F.R. § 1005.17(d). Any legal challenge to a disclosure made pursuant to Regulation E necessarily must contest the adequacy of the language used to make the disclosure. Thus, excluding challenges to the adequacy of the disclosure from the protection afforded by the safe harbor clause would render it superfluous and without effect.

A plain language reading of the safe harbor provision avoids such a disfavored result. The provision insulates a financial institution from liability for "any failure to make disclosure in proper form" if the institution uses the appropriate model clause from Form A–9. In other words, if a financial institution uses model language provided by the Bureau to make a disclosure, it is shielded from liability for claims that the disclosure is deficient. In this context, the word "form" refers to the "particular . . . structure[] or construction of a thing; the particular mode in which a thing exists or manifests itself." *Form*, THE OXFORD ENGLISH DICTIONARY (2d Ed. 1991); *accord form*, THE RANDOM HOUSE COLLEGE DICTIONARY (Rev. Ed. 1980) ("configuration. . . . the manner or style of arranging and coordinating parts for a pleasing or effective result."). Thus, the form of the disclosure must necessarily include the substantive language from which it is constructed. By shielding banks and credit unions from liability as to the form of a disclosure if they adopt model language drafted by the Bureau, the safe harbor provision provides immunity against claims that the structure or construction of the model language provided by the Bureau violates Regulation E.

The court concludes that the narrow interpretation of the EFTA's safe harbor provision advanced by Tilley would render it illusory. Indeed, Tilley's reading would transform the safe harbor into a siren song that lures financial institutions to founder on rocky shoals. The court

9

determines, therefore, that the form of a disclosure includes the substantive language used to make the disclosure.

Second, Tilley argues that the safe harbor provision does not apply because his EFTA claim is not based upon a failure to properly disclose information. He contends that his claim is based upon a provision that prohibits financial institutions from charging customers overdraft fees. But even a cursory review of Regulation E reveals this argument to be spurious. Regulation E provides that financial institutions "shall not assess a fee or charge on a consumer's account for paying an ATM or one-time debit card transaction pursuant to the institution's overdraft service, unless the institution: (i) Provides the consumer with a notice in writing . . . describing the institution's overdraft service." *Id.* § 1005.17(b)(1). Tilley's EFTA claim is that Mountain America improperly charged an overdraft fee because it did not provide a proper written notice—i.e., disclosure—to him beforehand. The key issue in Tilley's claim is whether Mountain America provided an adequate disclosure of its overdraft services. Thus, the safe harbor provision applies to Tilley's claim.

Finally, Tilley argues that the Bureau's official interpretation of Regulation E bars the application of the safe harbor provision in this case. The official interpretation contains the following comment on the model forms drafted by the Bureau and attached as Appendix A to Regulation E: "[T]he Bureau has issued model clauses for institutions to use in designing their disclosures. If an institution uses these clauses accurately to reflect its service, the institution is protected from liability for failure to make disclosures in proper form."[6] *Id.* § 1005, Supp. I.

---

[6] Tilley appears to suggest that the court should defer to the official interpretation issued by the Bureau. Generally, courts must defer to an agency's official interpretation of its own regulations. *See Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 211 (2011). But the Bureau's interpretation of Regulation E is not at issue here. The question before the court is how to interpret the safe harbor provision contained in the EFTA, a statute enacted by Congress. Where the Bureau's

Contrary to Tilley's assertion, this official interpretation does not defeat the safe harbor protections afforded by 15 U.S.C. § 1693m(d). It is true that financial institutions are not entitled to safe harbor protections if they use an inappropriate model clause or if the disclosure is inaccurate. *See Hale v. MBNA Am. Bank, N.A.*, No. 99CIV.8831(AGS), 2000 WL 1346812, at *3 (S.D.N.Y. Sept. 18, 2000) ("Quoting a model that inaccurately describes the situation is no defense against liability."); *Cirone-Shadow v. Union Nissan of Waukegan*, 955 F. Supp. 938, 944 (N.D. Ill. 1997) ("[C]ompliance with the model form does not protect [the defendant] from claims that it made misrepresentations within its contract."). But the model clause adopted by Mountain America does not misstate facts or inaccurately represent its overdraft service. At most, the notice is ambiguous because it did not clarify whether the credit union used the ledger balance method or the available balance method to determine whether an overdraft has occurred. *See Tims v. LGE Cmty. Credit Union*, No. 1:15-CV-4279-TWT, 2017 WL 5133230, at *6 (N.D. Ga. Nov. 6, 2017) ("Because 'enough money' can mean the available balance method, [the defendant financial institution] cannot be said to have explicitly misled the Plaintiff or inaccurately described its overdraft program. The only thing [the defendant financial institution] can be said to be guilty of is a lack of precision."). Because the model clause contained in the

---

official interpretation does not purport to interpret the EFTA, at least not directly, it is unclear whether the interpretation warrants *Chevron* deference. *See Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984) ("[C]onsiderable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer . . . ."). Nor is it clear whether the official interpretation was issued pursuant to notice-and-comment rulemaking, a prerequisite to *Chevron* deference. *See Christensen v. Harris Cty.*, 529 U.S. 576, 587 (2000) (holding that agency interpretations that were not arrived at after a formal adjudication or notice-and-comment rulemaking and which lack the force of law "do not warrant *Chevron*-style deference"). However, because the Bureau's official interpretation of Regulation E does not conflict with the court's reading of the safe harbor provision, the court need not determine whether it must defer to the Bureau's interpretation.

opt-in notice was not inaccurate, it did not run afoul of the Bureau's official interpretation of Regulation E.

The court, therefore, concludes that the safe harbor provision of the EFTA insulates Mountain America from liability for any violations of Regulation E.

*C. Leave to Amend*

Amendments that are not permitted as a matter of course under Rule 15(a)(1) of the Federal Rules of Civil Procedure require written consent from the opposing party or leave of the court. FED. R. CIV. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (citation omitted).

Here, leave to amend would be futile. The safe harbor provision is a fundamental legal impediment to the EFTA claim. Because the only facts that are relevant to the safe harbor defense are the language of the opt-in agreement and the language of Model Form A–9, pleading additional facts cannot change the operation of the safe harbor provision. The court, therefore, dismisses the EFTA claim with prejudice.

**II. THE STATE-LAW CLAIMS**

The sole basis for this court to hear the state-law claims against Mountain America is supplemental jurisdiction. This court "may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). "[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of

jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (footnote omitted); *accord Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."). The court, therefore, declines to exercise supplemental jurisdiction over the remaining state-law claims and dismisses them without prejudice.

## III. REQUESTS FOR JUDICIAL NOTICE

In support of its motion to dismiss, Mountain America requested that this court take judicial notice of its opt-in agreement and its membership agreement. Tilley objected, arguing that the court may not consider documents outside of the complaint without converting Mountain America's motion to a motion for summary judgment. As noted in footnote 1 of this Order, the court may consider a document referenced in the complaint when resolving a motion to dismiss if the document's authenticity is undisputed. *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253–54 (10th Cir. 2005). Because the complaint references the opt-in agreement and its authenticity is undisputed, the court takes judicial notice of this document. The court, however, has no occasion to consider the membership agreement in resolving the motion to dismiss the ETFA claim. Accordingly, Mountain America's request to take judicial notice of the membership agreement is denied as moot.

Tilley also requests judicial notice of several other documents and state-court orders. The court concludes that these documents are either not relevant to the motion to dismiss the EFTA claim or are not binding authority. The court, therefore, denies Tilley's request for judicial notice.

**CONCLUSION AND ORDER**

The court GRANTS Mountain America's motion to dismiss. The EFTA claim shall be DISMISSED WITH PREJUDICE. The remaining state-law claims shall be DISMISSED WITHOUT PREJUDICE.

DATED September 25, 2018.

BY THE COURT

_____
Jill N. Parrish
United States District Court Judge